AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: ___EMJ 6/12/2024___

# UNITED STATES DISTRICT COURT
### for the
Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNTS<br>"powder.ryan@gmail.com" and "ryan.rudick2019@gmail.com" THAT IS<br>STORED AT PREMISES CONTROLLED BY GOOGLE, INC. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. MJ-24- 504-SM |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference herein.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 2251(a) and (e) | Sexual Exploitation of a Child |
| 18 U.S.C. s. 2252A(a)(5)(B) and (b)(2) | Possession of and Access with Intent to View Material Containing Child Pornography |
| 18 U.S.C. s. 2252A(a)(2) and (b)(1) | Distribution and Receipt of Child Pornography |

The application is based on these facts:

See the attached Affidavit of FBI Special Agent Steven Carrick, which is incorporated by reference herein.

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 USC § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Steven Carrick, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 12, 2024

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

SUZANNE MITCHELL, U.S. MAGISTRATE JUDGE
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
THE GOOGLE ACCOUNTS
powder.ryan@gmail.com  AND
ryan.rudick2019@gmail.com  THAT IS
STORED AT PREMISES CONTROLLED
BY GOOGLE LLC

Case No.  M-24-504-SM

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Steven Carrick, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this Affidavit in support of an application for a search warrant for

information associated with certain accounts that are stored at premises owned, maintained,

controlled, or operated by Google LLC ("Google"), an electronic communications service

and/or remote computing service provider headquartered at 1600 Amphitheater Parkway,

Mountain View, California.  The information to be searched is described in the following

paragraphs and in Attachment A, hereinafter referred to as the **TARGET ACCOUNTS**.

2.      This Affidavit is made in support of an application for a search warrant under

18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the

government copies of the information (including the content of communications) further

described in Section I of Attachment B.  Upon receipt of the information described in Section

I of Attachment B, government-authorized persons will review that information to locate the

items described in Section II of Attachment B.

3.      I have been employed as a Special Agent with the FBI since February 2022 and have been assigned to the Oklahoma City Division of the FBI since June 2022. I completed four months of training at the FBI Academy in Quantico, Virginia. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills, forensic techniques, and a variety of other subjects. As a federal agent, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. Prior to my employment with the FBI, I was a Police Officer in Nashville, Tennessee for nine years. I spent four of those years investigating crimes against children, including physical abuse, sexual abuse, and homicide.

4.      The facts set forth in this Affidavit are based upon my personal observations, my training and experience, reports provided to me by other law enforcement officers, and statements made by witnesses and other concerned parties. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not included each and every fact known to me concerning this investigation. Based on the facts set forth in this Affidavit, I assert there is probable cause to believe that contraband and evidence of a crime, fruits of a crime, and instrumentalities of violations of 18 U.S.C. § 2251(a) and (e) (sexual exploitation of a child and (attempt)); 18 U.S.C. §§ 2252A(a)(2) and (b)(1) (distribution and/or receipt of material

containing child pornography (and attempt)); and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (possession of and access with intent to view child pornography (and attempt)) are presently located within the listed accounts.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## DEFINITIONS

6.     The following definitions apply to this Affidavit and Attachment B:

a.     "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors in sexually explicit poses or positions.

b.     "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

c.     "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage

functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

       d. "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

       e. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

       f. "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet. IP addresses can be "dynamic," meaning that the internet service provider assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

g.     "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet.   ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

h.     "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

i.     "Records," "documents," and "materials," as used herein, include all information recorded in any form and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

j.     "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

k.     "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

### BACKGROUND ON KIK MESSENGER

7.     In a nutshell, KIK Messenger, commonly called KIK, is a freeware instant

messaging mobile app from the Canadian company KIK Interactive, available free of charge on iOS and Android operating systems. KIK allows its users to talk to their friends and browse and share photos and videos and other files with their friends on KIK. KIK was founded in 2009 by a group of University of Waterloo students who started a company designed to shift the center of computing from the PC to the phone. According to the website, KIK Messenger, a free service easily downloaded from the Internet, has become the simplest, fastest, most life-like chat experience you can get on a smartphone. Unlike other messengers, KIK usernames, not phone numbers, are the basis for KIK user accounts, so KIK users can control with whom they communicate. In addition, KIK features include more than instant messaging. KIK users can exchange images, videos, sketches, stickers, and more with mobile web pages.

8.      KIK users are also able to create chat groups with a limited number of individuals to communicate in a group setting and exchange text messages, images and videos. These groups are administered by the group creator who has the authority to remove and ban other users from the created group. Once the group is created, KIK users have the option of sharing a link to the group that includes all of their contacts or any other user. These groups are frequently created with a group name containing a hashtag (#) that is easily identifiable or searchable by keyword.

9.      The KIK mobile application is available for download via the App Store for most iOS devices such as iPhones and iPads. Additionally, the KIK mobile application is available on the Google PlayStore for Android devices. KIK can be used on multiple mobile devices, to include cellular phones and tablets.

10.     In general, providers like KIK ask each of their subscribers to provide certain personal identifying information when registering for an account.    This information can include the subscriber's full name, physical address, and other identifiers such as an e-mail address.

11.     Providers typically retain certain transactional information about the creation and use of each account on their systems.    This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account.    In addition, providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account.    Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

12.     KIK offers users the ability to create an identity within the mobile application referred to as a "username."    This username is unique to the account and cannot be changed. No one else can utilize the same username.    A KIK user would have to create a new account in order to obtain a different username.    The username for a particular KIK account holder is displayed in their KIK profile.

13.    According to information provided to HSI by a KIK Law Enforcement Response Team Lead, KIK's Terms of Service prohibit KIK users from uploading, posting, sending, commenting on, or storing content that contains child pornography and/or child abuse images. The Terms of Service also provide that KIK may review, screen, and delete user content at any time if KIK believes use of their services are in violation of the law. According to KIK, KIK has a strong business interest in enforcing their Terms of Service and ensuring that their services are free of illegal content, and in particular, child sexual abuse material. Accordingly, KIK reports that it independently and voluntarily takes steps to monitor and safeguard their platform and that ridding KIK products and services of child abuse images is critically important to protecting their users, product, brand, and business interests.

14.    KIK was located in Ontario, Canada and was governed by Canadian law. According to information contained in the "KIK Interactive, Inc. Child Sexual Abuse and Illegal Material Report and Glossary" (hereinafter KIK Glossary), which KIK provided when reporting information to law enforcement authorities, KIK was mandated to report to the Royal Canadian Mounted Police (RCMP) any images and/or videos that would constitute suspected child pornography under Canadian law which are discovered on the KIK platform. According to the KIK Glossary, KIK is typically alerted to suspected child pornography on KIK based on digital hash value matches to previously identified child pornography or through reports from other KIK users or third-party moderators.

15.    The RCMP advised HSI agents that upon receiving a report from KIK

related to suspected child pornography, the RCMP reviewed the reported IP addresses of the KIK users contained in the KIK reports to determine their location.    The RCMP then provided KIK reports of KIK users in the United States to HSI in Ottawa, Canada, who in turn provided the KIK reports to the HSI Cyber Crimes Center (C3) Child Exploitation Investigations Unit (CEIU) located in Fairfax, Virginia for analysis and dissemination.

16.    In October 2019, KIK was purchased by MediaLab, a company operating in the United States.

## PROBABLE CAUSE

17.    On January 16, 2024, an FBI Online Covert Employee ("OCE"), in Jacksonville, Florida was connected to the Internet in an undercover capacity.    The OCE connected with a KIK user with username "RyanPipeliner" (hereinafter, the "SUBJECT ACCOUNT"), using screenname "R !"  "R!" was found to have a sexual interest in children.

18.    During the course of this online undercover session, the SUBJECT ACCOUNT shared three photos with the OCE that were taken in the same bathroom, of an unknown Caucasian female, with light brown to dark blonde hair, with her breasts, buttocks, and vaginal area exposed.  In two of the photos, the female's breasts were fully exposed.  In one of the photos, the female's buttocks are fully exposed.  The female's vaginal area was displayed in one of the photos where her breasts were also exposed.  It did not appear the female was aware the photos were being taken.  The FBI OCE commented, "Hey nice hidden cam pics."  The SUBJECT ACCOUNT replied, "More like videos that I took still from [laughing emoji] thanks."  Furthermore, the SUBJECT ACCOUNT stated the female was his minor step-

2

daughter.

19.     Agents issued an emergency disclosure request to KIK and requested any IP logs for user information related to the SUBJECT ACCOUNT. The results identified that the SUBJECT ACCOUNT utilized IP address 174.210.0.33 on Tuesday, January 16, 2024 at 1:08:02 p.m. CST.

20.     Law enforcement determined that the IP address belonged to Verizon. Agents issued a subpoena to Verizon for subscriber information regarding the SUBJECT ACCOUNT. The results from Verizon identified that IP address 174.210.0.33, which was utilized on Tuesday, January 16, 2024 at 1:08:02 p.m. CST, resolved to the account of Ryan K. Rudick ("Rudick"), whose listed address is 1924 West Carolina Ave, Chickasha, Oklahoma 73018 and listed phone number is 918-315-1943.

21.     Subsequent investigation revealed that Rudick has a 15-year-old step-daughter, which is supported by local school records. Furthermore, school records list the child's mother as Tara Trembath Rudick. Upon a social media search, agents were able to locate photographs of Rudick's 15-year-old step-daughter, who was a Caucasian female, with light brown to dark blonde hair, and who visually matches the female in the photos he shared on KIK. Law enforcement thus identified Rudick as a suspect in its investigation of the user of the SUBJECT ACCOUNT who distributed child pornography to the OCE on January 16, 2024.

22.     A Federal Search Warrant for Rudick's home was obtained and executed on February 1, 2024. Upon entering the home, it was discovered that Rudick was not home and was out of town for work near Wentzville, Missouri. FBI agents in Missouri made contact with

Rudick, who volunteered to meet with agents for an interview at the Wentzville Police Department in Missouri. Agents from the FBI St. Louis Division met with Rudick to conduct an interview. During the interview, agents noticed Rudick was attempting to delete items from his phone. As a result, agents seized Rudick's phone at that time. Rudick then provided written consent to search his device.

23.    In addition to Rudick's written consent to search his device, a Federal Search Warrant for Rudick's cellular device was obtained on February 12, 2024 and subsequently executed. The search of Rudick's cellular device revealed two Google accounts used within his device: powder.ryan@gmail.com and ryan.rudick2019@gmail.com (the **TARGET ACCOUNTS**). The search also revealed a message typed on Rudick's device, captured in the Samsung Keyboard Clipboard History, that read, "Also make an gmail and sign in on her phone and install Google photos and have it automatically back up. Then you have access to her pictures." In addition, a screenshot of a photo gallery was located within the "clipboard" of the device with numerous naked pictures and videos of Rudick's minor step-daughter. Some of the photos within the screenshot of the photo gallery appeared to be video clips of the phone user masturbating to the photos of his naked step-daughter and were photos that appeared to be taken surreptitiously. Significantly, at least one of the images in the screenshot of the photo gallery matched an image sent to the OCE in January 2024.

24.    Data discovered on Rudick's device revealed Google Chrome browser history for "What to do when FBI Agents show up at my house to interview me?" and "Can FBI Agents See Your Screen?" These searches were contemporaneous with the execution

4

of the residential search warrant by the FBI at his residence.  A search of the browser history also revealed a password reset for KIK Messenger, Google device preferences, Google People and Sharing preferences, and Google account deletion.  The timing of this data and history lines up with the timing of the FBI residential Search Warrant up until his phone was seized by FBI Agents from the St. Louis Division.

## BACKGROUND CONCERNING GOOGLE[1]

25.    Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications.  Google also offers to anyone, whether or not a user has a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze.  Many of these free services offer additional functionality if the user signs into a Google Account.

26.    In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of

---

[1] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:  the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

27.     Signing up for a Google Account automatically generates an email address at the domain gmail.com.  That email address will be the log-in username for access to the Google Account.

28.     Google advertises its services as "One Account.  All of Google working for you."  Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below.  In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

29. Google offers a cloud-based photo and video storage service called Google Photos.  Users can share or receive photos and videos with others.  Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar.  Users have the option to sync their mobile phone or device photos to Google Photos.  Google preserves files stored in Google Photos indefinitely unless the user deletes them.

30.     When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender.  If a user is paying for services, the user must also provide a physical address and means and source of payment.

6

31.     Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

32.     Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

33.     In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude

7

the innocent from further suspicion.   The subscriber information associated with the **TARGET ACCOUNTS** will help establish that Rudick was the owner of the account that contained child pornography images.

34.    Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.   There is probable cause to believe that there are images of child pornography stored within the Google Photos service associates with the **TARGET ACCOUNTS**.

35.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.   For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.   As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.   Such

information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

36.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

37.     Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of downloading and possessing child pornography. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of other instrumentalities of the crimes under investigation.

38.     Therefore, Google's servers are likely to contain stored images from the **TARGET ACCOUNTS'** Google Photos service, information to identify other instrumentalities of the crime under investigation, and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

39.    Based on the forgoing, I request that the Court issue the proposed search warrant.

40.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Steven Carrick
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on June _12_, 2024.

SUZANNE MITCHELL
United States Magistrate Judge
Western District of Oklahoma

10

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with powder.ryan@gmail.com and ryan.rudick2019@gmail.com (the "**TARGET ACCOUNTS**") that is stored at premises owned, maintained, controlled, or operated by Google LLC a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Google LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google. Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from January 1, 2024 to February 2, 2024 unless otherwise indicated:

    a.    All business records and subscriber information, in any form kept, pertaining to the **TARGET ACCOUNTS**, including:

        1.    Names (including subscriber names, user names, and screen names);

        2.    Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

        3.    Telephone numbers, including SMS recovery and alternate sign-in numbers;

        4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

5.    Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers;

6.    Length of service (including start date and creation IP) and types of service utilized;

7.    Means and source of payment (including any credit card or bank account number); and

8.    Change history.

b.    All device information associated with the **TARGET ACCOUNTS**, including but not limited to, manufacture names, model numbers, serial number, media access control ("MAC") addresses, international mobile equipment identifier ("IMEI") numbers, FCC ID numbers, Android IDs, and telephone numbers;

c.    Records of user activity for each connection made to or from the **TARGET ACCOUNTS**, including, for all Google services, the date, time, length, and method of connection, data transfer volume, usernames, source and destination IP address, name of accessed Google service, and all activity logs; and

d.    The contents of all media associated with the **TARGET ACCOUNTS** in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including

2

drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; all associated logs of each record, including the creation and change history, access logs, and IP addresses; and any settings that may indicate that images or other data were automatically uploaded from the synced device to Google Photos.

Google is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

3

II.    **Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of 18 U.S.C. §§ 2251(a) and (e), 18 U.S.C. §§ 2252A(a)(2) and (b)(1), and 18 U.S.C. §§ 2252A(a)(5)(B) & (b)(2) from January 1, 2024 to February 2, 2024 involving Ryan Rudick, including, for each of the **TARGET ACCOUNTS** or identifiers listed on Attachment A, information pertaining to the following matters:

    a.    Evidence of the possession, access with intent to view, and transportation of images depicting children engaged in sexually explicit conduct.

    b.    Evidence indicating how and when the **TARGET ACCOUNTS** were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

    c.    Evidence indicating the state of mind of the owner of the **TARGET ACCOUNTS** as it relates to the crime under investigation; and

    d.    The identity of the person(s) who created or used the **TARGET ACCOUNTS**, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents,

4

attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the Affiant may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.